## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 21-116** |
| **v.** | * | **SECTION: "E"** |
| **PERNELL ANTHONY JONES, JR.** | * | |
| | * * * | |

### FACTUAL BASIS

Should this matter have gone to trial, the Government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the Government in Counts 1 and 2 of the Bill of Information now pending against the defendant, **PERNELL ANTHONY JONES, JR. ("JONES")**, which charge him with conspiracy to commit mail fraud in violation of Title 18, United States Code, Section 1349 and with wire fraud in violation of Title 18, United States Code, Section 1341.  Both the Government and the defendant, **JONES**, do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crimes to which the defendant is pleading guilty.  Unless otherwise specified, the following acts took place within the Eastern District of Louisiana.

### Arrest on or about March 5, 2020

According to records obtained from American Airlines ("American"), on or about November 13, 2019, **JONES** used a pre-loaded gift card to purchase a ticket online under the name K.W. for American flight number 1102 from Louis Armstrong International Airport ("MSY") in Kenner, Louisiana to Dallas Fort Worth International Airport ("DFW") in Texas.  On or about November 22, 2019, **JONES** used an American Airlines self-check ticketing kiosk at MSY to

AUSA

Defendant

Defense Counsel

check in to American flight number 1102 under the fictitious identity K.W., obtained bag tag number 4001236924, and paid a $30 baggage fee.   When going through airport security, **JONES** provided personnel of the Transportation Security Administration ("TSA") with a fraudulent Tennessee driver's license that had the name K.W. and a photograph of **JONES**.   According to the American flight manifest, **JONES** then flew from MSY to DFW on American flight number 1102 under the fictitious identity K.W.   Upon arrival in DFW on or about November 22, 2019, **JONES** falsely reported to American employees that his name was K.W. and that his bag for American flight number 1102 was delayed or lost.

On or about December 1, 2020, **JONES** filled out an American Passenger Property Questionnaire form stating that the value of the lost items was $3,875.   **JONES** signed the name K.W. on this Questionnaire.   Between December 5, 2019 and January 29, 2020, **JONES**, posing as K.W., communicated with American employees by phone and by email using an email address he created for K.W.   During these interactions, **JONES** agreed to accept $3,500.00 in resolution of his claim and requested that the check be sent to XXXX Mandeville Street, Unit 1, New Orleans, LA 70122.   This address belonged to **JONES's** friend, S.B.   The Government would present testimony that **JONES** paid S.B. on several occasions to receive mail from airlines on his behalf addressed to fictitious identities.

At trial, an American Airlines Corporate Security Investigator would testify that American employees were suspicious of the K.W. claim because it had a similar *modus operandi* to numerous fraudulent baggage claims that American had received, including that the ticket was booked online with a gift card, and that K.W. provided three different addresses in connection with his claim. On or about February 28, 2020, American notified Jefferson Parish Sheriff's Office ("JPSO") of a

AUSA
Defendant
Defense Counsel

pattern of many instances of suspected fraud through their lost baggage claim submission.  In coordination with law enforcement officers, an American employee told **JONES** that he could retrieve the K.W. paycheck at MSY.

On or about March 5, 2020, **JONES** went to the American Airlines Baggage Services Office at MSY and stated that his name was K.W. and that he was there to pick up a reimbursement check for lost luggage.  The manager on duty for American would testify that she recognized **JONES** as an individual who had filed at least two previous lost baggage claims with American at MSY while the manager was present.  **JONES** began to fill out the "Baggage Settlement Check Release" form provided to him by the manager.

JPSO deputies working airport security were contacted and arrested **JONES** for state charges of forgery, attempted theft, and computer fraud.  **JONES** identified himself as "Pernell Jones" to JPSO deputies.  In a search incident to arrest, **JONES** was found in possession of two cellular phones; a fraudulent Tennessee driver's license in the name of K.W. with **JONES's** photograph; and another photo ID for a company named Jacobs with a fictitious identity and **JONES's** photograph.

**JONES** was transported to the JPSO Detective Bureau.  After being advised of and waiving his *Miranda* rights, **JONES** was interviewed by Special Agents with the Federal Bureau of Investigation ("FBI") and deputies with JPSO.  During the interview, **JONES** admitted to booking the K.W. flight and filing a false claim for lost baggage with American under the name K.W. but denied taking the flight.

That same day, on or about March 5, 2020, JPSO deputies obtained a search warrant for **JONES's** residence in Kenner, where he resided with his aunt.  Among other evidentiary items,

AUSA
Defendant
Defense Counsel



law enforcement seized a laptop; an Apple iPad; a scanner/printer; approximately 34 fraudulent driver's licenses; approximately 21 fake work identification cards; approximately 48 pre-loaded gift cards; a number of fraudulent security badges for American and for Alaska Airlines ("Alaska") with **JONES's** photograph; a Southwest Airlines ("Southwest") boarding pass under the name Daniel Gordon; and a receipt for lost or delayed baggage from Southwest.   The fraudulent driver's licenses were from multiple states with 34 unique names and all of the last names were hyphenated. All of the licenses used the same photograph of **JONES**.   The work identification cards also had various fictitious names and a photograph of **JONES**.

FBI agents compared the fraudulent driver's licenses, gift cards, and work identifications seized on March 5, 2020 to lost baggage claims data from airlines.   This analysis revealed that the names on the fraudulent driver's licenses seized from **JONES's** residence matched at least 48 fraudulent baggage claims and the gift cards matched the payment information for at least 20 fraudulent claims.

## Arrest on or about April 7, 2018

FBI special agents also learned that **JONES** had been arrested on or about April 7, 2018 in possession of additional fraudulent identification cards.   Specifically, on or about April 7, 2018 **JONES** went to Dallas Love Field Airport ("DAL") and presented TSA employees with a boarding pass for A.B. for a flight from DAL with an ultimate destination of MSY.   He also presented a fraudulent South Carolina driver's license with **JONES's** photograph and the name A.B.   At TSA screening, **JONES** placed a bag through the X-ray machine.   TSA observed an anomaly in the bag and opened it for further screening.   Inside the bag were 47 credit cards under

AUSA
Defendant
Defense Counsel

fictitious names and 36 fraudulent driver's licenses with **JONES's** photograph and fictitious names.

When questioned by TSA employees and officers with the City of Dallas Police Department, **JONES** admitted to owning the fraudulent driver's licenses and credit cards, but falsely stated that he possessed these cards for the purpose of obtaining promotional discounts for flights.   FBI agents compared the fraudulent licenses and credit cards to lost baggage claims data from airlines and observed that the names on these identifications matched approximately 14 additional baggage claims to airlines.

### Additional investigation

Federal search warrants were obtained for the cellular phones seized from **JONES** incident to his March 5, 2020 arrest, **JONES's** iCloud account, and the iPad and laptop seized from his residence.   FBI agents reviewed the search warrant results as well as records and other evidence obtained from, *inter alia*, airlines, telephone companies, financial institutions, and PayPal. Agents also interviewed numerous witnesses.

The FBI investigation revealed that, between 2015 and 2020, **JONES**, with the help of his co-conspirators, submitted over 180 fraudulent claims to commercial airlines, including American, Alaska, Southwest, United, and JetBlue, requesting over $550,000 in reimbursement for luggage that **JONES** falsely alleged had been lost.   **JONES's** false claims caused commercial airlines, including American, Alaska, Southwest, United, and JetBlue, to send checks by USPS totaling at least $300,000 in reimbursement for luggage that he falsely alleged had been lost.

To accomplish this scheme, **JONES** routinely booked flights with commercial airlines online under fictitious names for which **JONES** possessed fraudulent driver's licenses or state

AUSA
Defendant
Defense Counsel

identification cards.   These fraudulent identification cards contained **JONES's** photograph. **JONES** used a virtual private network ("VPN") to mask or re-route his Internet Protocol ("IP") addresses.   He often booked multiple one-way flights utilizing the same IP address.   **JONES** would take domestic flights under these aliases and obtain a ticket for baggage but would not check a bag.   At security, **JONES** would present fraudulent identification cards to TSA officials.   After arriving at the destination airport, **JONES** would falsely inform airline personnel that his baggage had been lost and would request reimbursement to compensate him for this baggage.

Electronic search warrant results showed that Co-Conspirator 1 assisted **JONES** in filling out false claim forms that were submitted to the airlines.   **JONES** and/or Co-Conspirator 1 would provide the commercial airlines with a false list of high value items that were purportedly in the lost baggage to ensure that the commercial airlines would agree to pay the maximum reimbursement for domestic flights of $3,500.00.   **JONES** instructed Co-Conspirator 1 on how to fill out the reimbursement forms in a manner that would ensure the maximum payout while evading detection.   For example, **JONES** emailed Co-Conspirator 1 that, "no items can be more than $150 unless I say I have a receipt for them," and instructed him to "keep the total in between $3,650 - $4,100."   Airline records showed that, on some instances, **JONES** emailed receipts for high value items to the airlines to justify receiving the maximum reimbursement amount.

To obscure his identity, **JONES** would communicate with the airlines utilizing phone numbers created with a program called BurnerApp that was saved on his phone and email addresses that were created to match the fictitious identities.   On some instances, **JONES** sent emails to airlines in support of his claims that attached a scanned image of a fraudulent driver's license with a fictitious name and **JONES's** photograph.   Electronic search warrant results

AUSA
Defendant
Defense Counsel

revealed that **JONES** and Co-Conspirator 1 tracked the fraudulent reimbursement claims utilizing spreadsheets and shared the spreadsheets with one another using an encrypted file storage program called Tresorit.  These spreadsheets contained, *inter alia*, the fictitious names that **JONES** had used for the flights, the names of the airlines, the dates of the flights, and the departure and arrival cities.

FBI's investigation revealed that, after receiving the fraudulent claims, the commercial airlines would generally mail reimbursement checks via the United States Postal Service ("USPS") in payment for these false claims.  Claim data obtained from airlines further revealed that **JONES** generally used addresses of his friends and associates to receive the reimbursement checks from commercial airlines so as to evade detection.  The Government would present testimony from individuals who received mail from airlines addressed to fictitious names on **JONES's** behalf.

For example, records from American evidenced that, on or about September 3, 2019, **JONES** flew from MSY to DFW on American flight number 2257 under the fictitious identity G.W.  Upon arrival in DFW on or about September 4, 2019, **JONES** falsely reported to American that his name was G.W. and that his baggage for American flight number 2257 was delayed or lost.  On or about September 9, 2019, **JONES** filled out an American Passenger Property Questionnaire form stating that the value of the lost items was $3,900, signed the name Greg White, and sent the form to American.  On or about October 16, 2019, American mailed an envelope via USPS from 1 Skyview Drive, Fort Worth, Texas 76115 to G.W. at XXXX Juno Drive, Chalmett(sic), St. Bernard Parish, LA 70043, containing check number 7541080 in the amount of approximately $3,500.00 in reimbursement for the fraudulent G.W. claim.  This destination address belonged to Co-Conspirator 2.  Search warrant results for **JONES's** phone

AUSA
Defendant
Defense Counsel

revealed that **JONES** created a document in the Notepad application with G.W.'s name and Co-Conspirator 2's address.   The Government would present testimony that, when Co-Conspirator 2 received this envelope, he notified **JONES** that it had arrived, and **JONES** came to retrieve it. Bank records show that, on or about October 24, 2019, check number 7541080 from American was endorsed and cashed.   During the search warrant of **JONES's** residence, law enforcement seized a fraudulent driver's license with the name G.W. and **JONES's** photograph.

On **JONES's** phones, agents located notes that were created in the Notepad program which contained fictitious names and other information used for approximately 93 fraudulent claims to airlines for lost baggage.   For example, **JONES's** phones contained a Notepad document with information regarding the K.W. claim.   **JONES's** phones also contained screenshots of airline baggage claim personnel contact information.   The results from the digital search warrants also contained over 200 airline documents, such as boarding passes, baggage tickets, flight bookings, and statement of loss forms under fictitious names.

In addition, the search warrant results had numerous text message conversations in which **JONES** asked his associates to receive mail that was addressed to the names on his fraudulent baggage claims.   For example, on or about January 7, 2020, S.B. messaged **JONES**, "More mail coming to Mandeville Street bro?" and on January 8, 2020, **JONES** replied that K.W. "should be within 14 business days[.]"   Similarly, on September 24, 2019, **JONES** informed S.H. that he should receive mail within the next week regarding J.A.   The name J.A. is associated with a fraudulent baggage claim submitted to American.

AUSA
Defendant
Defense Counsel

## Joint claim by JONES and Co-Conspirator 2

The Government would also present evidence that **JONES** directed Co-Conspirator 2 to assist in making a false claim at MSY on one occasion.   Records from American show that, on or about January 30, 2020, **JONES** flew from O'Hare International Airport ("ORD") in Chicago, Illinois to MSY on American flight number 3460 under the fictitious identity Z.D., utilizing a fraudulent identification with **JONES's** photograph.   **JONES** obtained a baggage ticket for flight number 3460 but did not check a bag.   The Government would present testimony that, after **JONES** arrived in Louisiana on or about January 31, 2020, he asked Co-Conspirator 2 to go into the airport and make a false claim for lost baggage under the fictitious identity Z.D., and Co-Conspirator 2 agreed.   **JONES** provided Co-Conspirator 2 with the baggage ticket that **JONES** had obtained from American, and **JONES** wrote down an email address and phone number that Co-Conspirator 2 should say belonged to him.

The Government would present testimony that Co-Conspirator 2 went into MSY and pretended to look for a bag at the baggage claim carousel for American flight number 3460.   Co-Conspirator 2 then approached the American service counter at MSY and falsely reported that his name was Z.D. and that his bag for American flight 3460 was delayed or lost.   Co-Conspirator 2 was provided a Delayed Baggage Receipt, which he gave to **JONES**.   The American employee who spoke with Co-Conspirator 2 was aware that American had recently received a number of fraudulent claims for lost baggage that had a similar *modus operandi* to the Z.D. claim and the employee was suspicious.   The American employee took photographs and a video of Co-Conspirator 2 making the false claim.   On or about February 19, 2020, **JONES** filled out an American Passenger Property Questionnaire form stating that the value of the lost items was

AUSA
Defendant
Defense Counsel

$3,975 and signed the name Z.D.  **JONES**, posing as Z.D., requested that American mail him a reimbursement check to compensate him for the lost luggage.  This claim, however, was flagged as fraudulent and American did not send a reimbursement check. During the search of **JONES's** residence, law enforcement recovered a fraudulent Tennessee driver's license with the name Z.D. and **JONES's** photograph.

### DHL package on or about March 19, 2020

On or about March 19, 2020, HSI intercepted a DHL package from Hong Kong when it arrived in Kentucky, pursuant to HSI's authority to inspect and search packages upon at the functional equivalent of a border when they arrive in the United States.  This package was going to Co-Conspirator 2's address under the name M.P.  This package contained 22 counterfeit drivers' licenses under various fictitious identities with **JONES's** image.  One identification card contained Co-Conspirator 2's name and **JONES's** image.  According to Co-Conspirator 2, he did not give **JONES** permission to use his name on an identification.

### Conclusion

In sum, the Government would present evidence that, through the above-described scheme, **JONES** conspired with Co-Conspirator 1, Co-Conspirator 2, and others to commit mail fraud by submitting false claims to commercial airlines requesting reimbursement for purportedly lost baggage between 2015 and 2020.  **JONES** admits that he submitted more than $550,000 in false claims to commercial airlines, and that this intended loss was foreseeable to him.  The Government would also prove that, through his false and fraudulent representations, **JONES** caused American to mail a check for $3,500 from Texas to the Eastern District of Louisiana through USPS on or about October 16, 2019.

AUSA

Defendant

Defense Counsel

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **JONES** and/or the government.   Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea.   The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offenses by **JONES**.

The above facts come from an investigation conducted by, and would be proven at trial through, *inter alia*, credible testimony from witnesses including Special Agents from the Federal Bureau of Investigation, Special Agents with the Department of Homeland Security, employees of American Airlines, and Deputies with Jefferson Parish Sheriff's Office; and the introduction of bank records, photographs, video footage, flight records, and other admissible tangible exhibits in the custody of the FBI.

READ AND APPROVED:

_____
PERNELL ANTHONY JONES, JR.
Defendant

_____
CLARENCE ROBY
Counsel for Defendant

_____
MARIA M. CARBONI
Assistant United States Attorney